```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DUSHYANT KURUWA and                              :
MONICA ARGUELLES,
                                                 :     OPINION AND ORDER
                        Plaintiffs,                    09 Civ. 4412  (GWG)
                                                 :
        -v.-
                                                 :

MILTON L. MEYERS,                                :

                        Defendant.               :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

I.      BACKGROUND

Plaintiffs Dushyant Kuruwa and Monica Arguelles – who are now proceeding pro se though they were represented at the time suit was filed in May 2009 – seek damages against attorney Milton Meyers based on Meyers' representation of Kuruwa for immigration purposes. See Complaint, filed May 7, 2009 (Docket # 1) ("Compl."). The case has proceeded through discovery and motions for summary judgment by each side.[1]

On April 12, 2011, after the Court denied both parties' motions for summary judgment, see Order, filed Mar. 2, 2011 (Docket # 40), the Court ordered the parties to submit a proposed joint pretrial order by May 6, 2011. Order, filed Apr. 12, 2011 (Docket # 43). The Court directed Meyers to supply his portion of the pre-trial order materials to plaintiffs by April 22, 2011. See id. ¶ 2. At Meyers' request, this deadline was extended to April 27, 2011. Memorandum Order, filed Apr. 25, 2011 (Docket # 44). Meyers did not comply with this

---

[1] The parties consented to have this matter decided by a United States Magistrate Judge.

deadline but instead wrote a letter after the deadline seeking an extension sine die for medical reasons, which was granted. See Memorandum Order, filed May 6, 2011 (Docket # 47). By Order dated May 24, 2011, the Court gave Meyers an extension until June 15 to submit his pre-trial order materials to plaintiffs. See Order, filed May 25, 2011 (Docket # 48). The Court extended this deadline to June 22. See Order, filed June 15, 2011 (Docket # 49). Meyers failed to meet this deadline, however, and has never asked that it be extended.

When the June 22 deadline was not met, the Court issued an Order to Show Cause directing Meyers to show cause why he should not be sanctioned for his failure to supply his portion of the joint pre-trial order materials. See Order, filed June 29, 2011 (Docket # 50). Not only did Meyers fail to provide a reason to the Court as to why he should not be sanctioned, he failed to respond to the Order to Show Cause at all. Accordingly, the Court issued an order finding Meyers in default as a sanction pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vi). See Order, filed July 14, 2011 (Docket # 51).[2]

Thereafter, the parties were directed to submit affidavits regarding damages. Id.

---

[2] The Court notes that prior to issuing this order, it considered the appropriateness of the sanction in accordance with the factors outlined in Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302-03 (2d Cir. 2009). The Court concluded that Meyers' failure was wilful in that Meyers was aware of the June 15 Order but did not comply with it. Meyers' awareness was made patent by the fact that a clerk to the Court faxed the June 15 Order to Meyers and called to confirm its receipt. Additionally, Meyers never sought an extension of the June 22 deadline and did not respond to the Order to Show Cause. Second, the Court believed that no lesser sanctions would be effective inasmuch as Meyers did not comply with multiple orders of the Court with respect to the pre-trial order and had previously failed to comply with a Court order on two occasions. See Order, filed Dec. 3, 2010 (Docket # 22); Order, filed Dec. 14, 2010 (Docket # 25). Also, when given the opportunity to do so, Meyers declined to provide the Court with any explanation for his behavior and declined to provide any reason at all as to why the sanction of default should not issue. Third, Meyers had been non-compliant since June 22 and had made no effort to comply since that date. Finally, the Order to Show Cause by its terms warned Meyers that he could be sanctioned with a default.

Plaintiffs submitted an affidavit on August 5, 2011. See Affidavit in Support of Plaintiff's Claim for Damages, filed Aug. 5, 2011 (Docket # 52) ("Pl. Aff."). Meyers submitted an affidavit in opposition, see Defendant's Affidavit in Opposition to Plaintiff's Claim for Damages, filed Aug. 26, 2011 (Docket # 53) ("Def. Aff."), and plaintiffs submitted a reply affidavit, see Reply to Defendant's Opposition to Plaintiff's Affidavit in Support of Claim for Damages, filed Sept. 9, 2011 (Docket # 55) ("Pl. Reply").

In light of the default imposed under Rule 37, we follow the procedure for entry of a default judgment as set forth in Fed. R. Civ. P. 55. Under the case law interpreting that rule, the default establishes Meyers' liability, see, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995), as long as the complaint has stated a valid cause of action, see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("a district court need not agree that the alleged facts constitute a valid cause of action" and "prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law") (citations and internal punctuation omitted).

Thus, for any valid cause of action in the instant complaint, the only issue remaining is whether plaintiffs have supplied adequate support for the damages they seek. See GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks.") (citations omitted); accord Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert denied, 506 U.S. 1080 (1993).

The Second Circuit has held that an inquest into damages may be held on the basis of

documentary evidence alone, "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991), cert denied, 503 U.S. 1006 (1992). Plaintiffs' submissions include affidavits and attached documentary evidence. Because these submissions provide a basis for an award of damages, no hearing is required.

II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

Inasmuch as Meyers is in default, the complaint's properly-pleaded allegations, with the exception of those relating to damages, are accepted as true. See, e.g., Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor . . .") (citation omitted); accord Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009).

The following findings of fact and conclusions of law are based on the allegations in the complaint regarding liability and the admissible evidence regarding damages in plaintiffs' and Meyers' submissions.

   A.     Facts Relating to Liability

Meyers is an attorney with an office in New York, NY. Compl. ¶ 4. Kuruwa is a citizen of India and his wife, Arguelles, is a citizen of Mexico. Id. ¶¶ 2,3. In August 2007, Kuruwa was hired "as a Project Engineer by the Turner Corporation." Id. ¶ 8. At the time he was hired, Kuruwa had an H1-B visa which authorized him to work in the United States. Id. ¶ 10. Kuruwa had obtained the H1-B visa in or around 1999 and it was set to expire on July 28, 2008. Id.

4

¶¶ 10-11.  As the dependent of an H1-B visa recipient, Arguelles had an H-4 visa.  Id. ¶ 17.

In September 2007, Kuruwa agreed that Meyers would process his visa paperwork to extend his stay past July 28, 2008.  Id. ¶ 12.  Meyers was aware that Kuruwa's visa expired in 2008 and that he needed to act quickly.  See Email from M. Meyers to R. Vigilante, dated Aug. 21, 2007 (annexed as Ex. 16 to Pl. Aff.).  Kuruwa's employer, Turner Corporation, agreed to sponsor Kuruwa for a green card application.  Compl. ¶ 20.  Meyers agreed to submit the green card application for Kuruwa.  Id. ¶ 21.  Meyers claimed to have filed the green card application, see id. ¶ 23; id. Ex. A, but in fact did not do so, id. ¶ 24.  Nor did Meyers file for an extension of the H1-B visa before it expired.  Id. ¶ 25.  Kuruwa did not learn that his paperwork was not completed until March 7, 2009, when he was notified by the Department of Homeland Security that a petition to extend his B-2 status had been denied.  Id. ¶ 26.  Kuruwa also learned that someone, without his authorization, had filed a petition to change his status to "B1/B2 - business or tourist."  Id. ¶ 27, 29.

Kuruwa and Arguelles departed from the United States in July 2009, though they later returned.  The record on this motion does not explain how they returned or what their current immigration status is.  The Court notes that they appeared at a court conference seeking to relieve their attorney on October 1, 2010.

B.  Damages

Plaintiffs' complaint contains five causes of action for which they seek damages: legal malpractice, breach of contract, fraud, violation of N.Y. Jud. Law § 487(1), and loss of consortium.  See Compl.  Plaintiffs also request that they be granted costs, as well as pre-judgment interest and punitive damages.  Pl. Aff. at 9, 11, 13, 15.  We first discuss the claims for relief and the appropriate damages therefor.  We conclude by discussing the requests for punitive

5

damages, interest and costs.

        1.      Legal Malpractice

Kuruwa seeks damages for legal malpractice stemming from Meyers' failure to submit the necessary paperwork for Kuruwa's green card application and extension of his H1B visa. See Pl. Aff. at 9. Kuruwa's employment was dependent on his being lawfully in the United States. Id. Thus, when he no longer had legal status in the United States he was terminated from his job. Id. As a result of his termination, Kuruwa seeks "at least" $109,227, which equals one year's salary at the company where he was previously employed, in damages. Id.

To prevail on a legal malpractice claim, a plaintiff must prove "three elements: the negligence of the attorney; that the negligence was the proximate cause of the loss sustained; and proof of actual damages." Between the Bread Realty Corp. v. Salans Hertzfeld Heilbronn Christy & Viener, 290 A.D.2d 380, 380 (1st Dep't 2002) (citations omitted). The record reflects that Turner Construction was assisting Kuruwa in applying for a visa extension. See I-129, Petition for a Nonimmigrant Worker, dated June 25, 2008 (annexed as Ex. 17A to Pl. Aff.); Email from R. Vigilante to M. Meyers, dated Feb. 14, 2008 (annexed as Ex. 2B to Pl. Reply). The only reason his application for a change in status to a temporary visitor was rejected was because it was submitted after his previous visa had expired. See Notice of Decision, dated Mar. 7, 2009 (annexed as Ex. 12 to Pl. Aff.). The project Kuruwa was working on at Turner Construction was scheduled to last for several more years. See Email from E. Contillo to D. Kuruwa, dated Oct. 27, 2008 (annexed as Ex. 21 to Pl. Reply); Zach Veilleux, Building Renovations Proceeding Despite Snow, Benchmarks, Feb. 18, 2011 (annexed as Ex. 19B to Pl. Reply). Therefore, the record supports Kuruwa's contention that Meyers' negligence in failing to pursue his immigration applications prevented Kuruwa from remaining in the United States

and caused the loss of his employment at Turner Corporation.

Meyers does not dispute the amount that Kuruwa asserts constitutes one-year's salary at Turner Corporation.[3]   Instead, he argues that Kuruwa had a duty to mitigate his damages.  Def. Aff. ¶ 4.  Meyers is correct that under New York law a "harmed plaintiff must mitigate damages."  Air Et Chaleur, S.A. v. Janeway, 757 F.2d 489, 494 (2d Cir. 1985) (citations omitted); accord Wilmot v. State, 32 N.Y.2d 164, 168 (1973) ("[T]he party seeking damages is under the duty to make a reasonable effort to avoid consequences of the act complained of.") (internal quotations and citations omitted).  However, the burden is on the defendant to introduce "evidence to prove that plaintiffs could have lessened their damages."  Air Et Chaleur, S.A., 757 F.2d at 494 (citation omitted).  A defendant must show that the plaintiff failed to mitigate, and that reasonable efforts "would have reduced the damages."  Tatar v. Elite Gold, Inc., 2002 WL 31682391, at * 2 (S.D.N.Y. Nov. 26, 2002) (citations omitted); accord Coastal Power Int'l Ltd. v. Transcont'l Capital Corp., 10 F. Supp. 2d 345, 370 (S.D.N.Y. 1998) (citations omitted).

Despite having the burden to show the failure to mitigate, Meyers has provided no evidence on this point.  He merely states his own belief – the foundation of which is not revealed – that "while markets and construction were depressed here that apparently was not the case in India."  Def. Aff. ¶ 4.  This vague and unsupported statement is insufficient to show that Kuruwa failed to mitigate damages.  Accordingly, Kuruwa is entitled to damages of $109,227, or one year's salary, as Kuruwa requests.  See Pl. Aff. at 9; Ex. 8A, 8B.

---

[3]  Kuruwa seeks $109,227 as one year's salary.  See Pl. Aff. at 9; Ex. 8A, 8B.  While the total amount supported by the documentary evidence Kuruwa provides – including a promised bonus, a 15% locality adjustment, and a July 1, 2008 merit increase – would seem to support a slightly greater annual salary, we will accept Kuruwa's figure.

In addition, Meyers' failure to inform plaintiffs that their visas had expired led them to incur costs in arranging for a voluntary departure from the United States. See Pl. Aff. at 13. In order to avoid being subject to a mandatory ten-year ineligibility period, see 8 U.S.C. § 1182(a)(9)(B)(i)(I), plaintiffs voluntarily departed the United States on July 18, 2009. Pl. Aff. at 13, Ex. 11D. As it was Meyers' failure to file the necessary paperwork and inform plaintiffs of their illegal status that led to their voluntary departure, Kuruwa is entitled to the expenses related to arranging for and effectuating the voluntary departure, or $6,808. See Pl. Aff. 13; Ex. 11A-G.

2.   Breach of Contract

The complaint asserts a breach of contract action on behalf of Arguelles. See Compl. ¶¶ 42-46. Arguelles alleges that she was a third-party beneficiary of the agreement between Kuruwa and Meyers. Id. ¶ 43. Meyers has not contested that Arguelles was a third-party beneficiary of this agreement or that she is entitled to contractual damages. Under New York law, a successful plaintiff in a breach of contract action is entitled to damages in the "amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir. 1995) (quoting Adams v. Lindblad Travel, Inc., 730 F.2d 89, 92 (2d Cir. 1984)); accord Trans Atl. Airlines, Inc. v. Kambi Travel Int'l, 2006 WL 1317024, at *1 (S.D.N.Y. May 12, 2006).

Plaintiffs, however, do not submit any evidence as to what monetary damages Arguelles suffered as a result of Meyers' breach of contract. They merely request that the Court impose "severe punitive damages as the Court deems fit, just and proper." Pl. Aff. at 11. As plaintiffs have offered no documentary evidence as to compensatory damages caused by the breach of contract, they are not entitled to compensatory damages on this claim. The Court will award,

however, nominal damages of $1.00.  See Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 95 (1993) ("Nominal damages are always available in breach of contract actions.").

        3.      Fraud

The complaint alleges that Meyers committed fraud when he falsely told Kuruwa that he had submitted a green card application on his behalf.  See Compl. ¶ 48.  But this same act forms a basis for the malpractice claim.  Id. ¶¶ 23-24.  The complaint does not allege damages resulting from the fraud claim that are in any way distinct from the damages resulting from the malpractice claim.  See id. ¶¶ 50-51.  Under New York law, a claim of fraud that duplicates a claim of legal malpractice must be dismissed.  See, e.g., Sabo v. Alan B. Brill, P.C., 25 A.D.3d 420, 421 (1st Dep't 2006) (to advance a claim sounding in fraud when legal malpractice is also alleged, the fraudulent conduct must be based on an allegation of "independent, intentionally tortious conduct"); LaBrake v. Enzien, 167 A.D.2d 709, 711-12 (3d Dep't 1990) ("[D]amages sustained by virtue of a fraud must be different or additional to those sustained by virtue of any malpractice."); accord Daniels v. Turco, 84 A.D.3d 858, 859 (2d Dep't 2011).  Accordingly, plaintiffs cannot be awarded damages for their fraud claim.

        4.      Breach of Judiciary Law § 487(1)

New York Judiciary Law provides for treble damages for attorneys who are "guilty of any deceit or collusion."  N.Y. Jud. Law § 487(1).  In their complaint, plaintiffs alleged that Meyers falsely stated that he had applied for Kuruwa's green card, see Compl. ¶¶ 23, 24, and that Meyers filed an application for a status change to a business or tourist visa without plaintiffs' consent, id. ¶¶ 27, 29-30.  Meyers argues that the claim must fail because § 487 only applies to a "chronic, extreme pattern of legal delinquency."  Def. Aff. ¶ 1.  Meyers is correct on this point, see, e.g., Kaminsky v. Herrick, Feinstein LLP, 59 A.D.3d 1, 13 (1st Dep't 2008), and

the Court concurs that the complaint could not be construed as meeting this standard.

In any event, plaintiffs are not entitled to damages on this claim for an entirely different reason. New York law requires that "the alleged deceit forming the basis of [a claim under § 487], if it is not directed at a court, must occur during the course of a 'pending judicial proceeding.'" Costalas v. Amalfitano, 305 A.D.2d 202, 204 (1st Dep't 2003) (citation omitted). The complaint, however, makes no allegation that Meyers' false statement was part of any such proceeding. Accordingly, no damages can be awarded on this claim.

### 5. Loss of Consortium

A claim for loss of consortium includes such items as loss of support or services, companionship, affection, society, sexual relations, and solace. Millington v. Southeastern Elevator Co., 22 N.Y.2d 498, 502 (1968). Arguelles asserts a loss of consortium claim based upon the time she and Kuruwa spent apart following their voluntary departure from the United States. Compl. ¶¶ 52-55. But Arguelles has not shown that she and Kuruwa were compelled to go to different countries in order to voluntarily depart from the United States. Accordingly, she has not shown how Meyers' actions were the proximate cause of the damages she seeks. Accordingly, no award is made with respect to her loss of consortium claim.

### 6. Punitive Damages

Punitive damages are available where the plaintiff demonstrates "conduct that was directed to the general public or that evinced the requisite 'high degree of moral turpitude' or 'wanton dishonesty.'" Williams v. Coppola, 23 A.D.3d 1012, 1013 (4th Dep't 2005) leave dismissed 7 N.Y.3d 741 (2006) (quoting Walker v. Sheldon, 10 N.Y.2d 401, 405 (1961)). The Court believes the standard of "wanton dishonesty" has been met in that it is alleged that Meyers was dishonest in asserting that he had filed a green card application on Kuruwa's behalf.

Accordingly, the Court in its discretion awards $25,000 in punitive damages to Kuruwa and $5,000 in punitive damages to Arguelles.

       7.      Costs and Prejudgment Interest

Plaintiffs also seek prejudgment interest of 9% pursuant to N.Y. C.P.L.R. §§ 5001, 5004. See Pl. Affidavit at 15. In a diversity case such as this one, "state law governs the award of prejudgment interest." Schipani v. McLeod, 541 F.3d 158, 164–65 (2d Cir. 2008) (citing Baker v. Dorfman, 239 F.3d 415, 425 (2d Cir. 2000)). CPLR § 5001 "operates to permit an award of prejudgment interest from the date of the accrual of the malpractice action in actions seeking damages for attorney malpractice." Barnett v. Schwartz, 47 A.D.3d 197, 208 (2d Dep't 2007) (quotations omitted); accord Baker v. Dorfman, 239 F.3d 415, 426 (2d Cir. 2000). Neither side has proposed the date on which the malpractice action accrued in this case. In any event, under § 5001(b), "interest upon damages" is computed not based on the date of the accrual of the action but rather "from the date incurred." Section 5001(b) further provides that "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."

Here, the one-year loss of wages apparently occurred between April 3, 2009 (the date Kuruwa's employment at Turner Construction was terminated), see Notice of Motion of Plaintiff's Cross-Motion for Summary Judgment, filed Dec. 28, 2010 (Docket # 31) at 12 ¶ 42, and April 3, 2010. In accordance with the statute, we will calculate prejudgment interest based on the midpoint date, October 3, 2009.

As for the expenses of voluntary departure, these damages were incurred for expenditures between April 17, 2009, and September 4, 2010. See Pl. Aff. at 13, Ex. 11A, 11G. Accordingly, prejudgment interest on those damages will run from the midpoint date, December 26, 2009.

11

Plaintiffs seek costs in bringing this action, including the filing fee. These costs total $2,196. Pl. Aff. at 15. Meyers has not opposed these costs and therefore they will be awarded as well.

Summary of damages

Plaintiffs are entitled to an award as follows:

KURUWA

    Compensatory Damages:    $109,227 plus prejudgment interest

                                     $6,808 plus prejudgment interest

    Punitive Damages:        $25,000

    Costs:                        $2,196

    Prejudgment Interest:

        For the award of $109,227, prejudgment interest accrues at the rate of $26.93 per day ($109,227/365 X 0.09) from October 3, 2010 until the date of judgment.

        For the award of $6,808, prejudgment interest accrues at the rate of $1.68 per day from December 26, 2009 ($6,808/365 X 0.09), until the date of judgment

ARUGELLES

    Nominal damages:    $1

    Punitive Damages:    $5,000

III.    CONCLUSION

With respect to plaintiff Dushyant Kuruwa, the Clerk is directed to calculate the amount of judgment against defendant Milton Meyers, which is $ 143,231 plus (a) prejudgment interest accruing at the rate of $26.93 per day from October 3, 2010 until the date of judgment, plus (b) prejudgment interest accruing at the rate of $1.68 per day from December 26, 2009 until the date

of judgment, and to enter judgment accordingly.

With respect to plaintiff Monica Arguelles, the Clerk is directed to enter judgment against defendant Milton Meyers in the amount of $5,001.00.

Dated: October 21, 2011
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to

Dushyant Kuruwa
Monica Arguelles
24-31 Steinway St., Apt. 11
Astoria, NY 11103

Milton L. Meyers, Esq.
305 Broadway, Suite 1201
New York, NY 10007